the Gardens' tenants with "reasonable access" to the pool and deck for at least 10 and possibly 20 years. The tenant respondents, however, claim that the agreement does not contain the equal access and no preference provisions of the 1950 and 1960 agreements. They also argue that the hours of the pool's availability have been substantially reduced under the 1994 agreement, which provides for a minimum daily availability of the pool of 7.25 hours each weekday except Wednesday and 5 hours each day on Saturdays and Sundays. In our view, neither argument has merit. Accordingly, we reverse the order granting the tenants' motion to release the $52,500 in escrow funds to them and grant the cross-motion for the release of said funds to Gardens.

Although the 1994 agreement does not expressly contain the equal access and no preference provisions of the 1950 and 1960 agreements, it does not differentiate between Gardens' and Towers' residents when it speaks of reasonable access and sets forth the minimum hours of pool availability. Neither the respondent tenants nor the Civil Court or Appellate Term, which ruled in tenants' favor, cite any provision in the 1994 agreement that specifically provides for disparate access. Furthermore, under the 1994 agreement, after Towers' threshold responsibility for the first $2,500 per year is met, "[Towers] and Gardens shall contribute equally" to the maintenance of the pool. The agreement requires that Gardens be consulted before any maintenance expense determinations are made. Finally, since the 1994 agreement went into effect, Gardens' tenants have enjoyed equal pool access at double the minimum hours provided therein and at a rate comparable to 1992, when they were denied access. Thus, in our view, the 1994 agreement is, as a matter of law, rife with the implication that it does, indeed, provide equal access. Concur—Sullivan, J. P., Milonas, Rubin and Tom, JJ.

■ LONDINO STONE CO., INC., Appellant, v A&T IRON WORKS, INC., et al., Respondents, et al., Counterclaim Defendant. [670 NYS2d 479] —Order, Supreme Court, Bronx County (Luis Gonzalez, J.), entered on or about April 1, 1997, which granted defendant's motion for leave to serve a supplemental summons and amended answer joining an additional defendant on its counterclaim, unanimously affirmed, without costs.

Joinder of the proposed new counterclaim defendant is warranted by the relation back doctrine of CPLR 203 (b) and (f) (see, Buran v Coupal, 87 NY2d 173, 177-182). Unity of interest between plaintiff and the proposed new party is demonstrated by plaintiff's president's admission at his deposition that he is

the owner of both plaintiff and the proposed new party, and that he received the invoices relating to the alleged agreement between defendant and the proposed new party. It also appears that defendant would have joined the new party at a much earlier time had it known of the relationship between plaintiff and the new party, which was first revealed by plaintiff's president only at his deposition conducted five years after the service of plaintiff's first reply to defendant's answer. Finally, the original pleadings and the proposed amended answer relate to the same series of transactions and occurrences. Concur—Ellerin, J. P., Wallach, Rubin, Tom and Saxe, JJ.

■ ROBERT PIDGEON, Appellant, v METRO-NORTH COMMUTER RAILROAD, Respondent. [670 NYS2d 833] —Order, Supreme Court, New York County (Leland DeGrasse, J.), entered on or about April 14, 1997, which granted defendant's motion for summary judgment, unanimously reversed, on the law, without costs, the motion denied, and the complaint reinstated.

The motion court erred in holding that plaintiff's showing was insufficient to create issues of fact as to negligence and notice.

The Federal Employers' Liability Act ([FELA] 45 USC § 51 *et seq.*), upon which plaintiff has based his action, generally provides that every railroad "shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." (45 USC § 51.)

The test as to whether a case under FELA is to be submitted to a jury is whether the proofs submitted justify the conclusion that the employer's negligence played any part, even the slightest, in producing the death or injury for which damages are sought: "It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played *any part at all* in the injury or death" (*Rogers v Missouri Pac. R. R. Co.*, 352 US 500, 506-507 [emphasis added]; *see, Curley v Consolidated Rail Corp.*, 178 AD2d 318, *affd* 81 NY2d 746, *cert denied* 508 US